## Weaver et al. v. Washington Borough.

*Negligence—Contributory negligence—Defect in sidewalk—Notice to borough—Question for jury.*

1. In an action against a borough to recover damages for personal injuries caused by tripping over a defect in a sidewalk, where there is evidence which, if believed, would tend to show that the defect which caused the accident had existed for two years or more, that evidence is sufficient to go to the jury on the question of the negligence of the borough.

2. The fact that on one or more previous occasions the plaintiff may have passed over the walk without observing the defect which caused her injuries cannot be declared negligence, as matter of law, by the court. Where the testimony for the plaintiff was that because of the darkness at the time and place where she was injured she could not see the defect in the walk, the question of her contributory negligence was properly left to the jury to determine.

Motion for judgment *n. o. v.* C. P. Washington Co., May T., 1921, No. 48.

*Witherspoon & Devore,* for plaintiffs.

*Hamilton & Pipes* and *Acheson & Crumrine,* for defendant.

BROWNSON, P. J., May 8, 1922.—The accident which gave rise to this action occurred on March 8, 1919, when Mrs. Weaver, while walking along a sidewalk, about 10.30 o'clock on a dark and rainy evening, was tripped and thrown down by the catching of the toe of her shoe underneath the upturned edge of a flagstone. The defendant asks for judgment *non obstante veredicto* upon two grounds: (1) That there was not sufficient evidence to charge the borough with constructive notice of the fact that the flagstone was tilted and out of position; and (2) that the evidence establishes contributory negligence on the part of Mrs. Weaver.

1. The condition of the flagstone at the time of the accident was described by witnesses as being, that the edge of it which faced Mrs. Weaver as she approached it was tilted up so as to be three to three and one-half inches above the general level of the sidewalk, and so that there was room for the toe of a woman's shoe, while walking in the dark, to get underneath and be caught by it, the corresponding opposite edge of the stone being depressed to the same extent.

Carson Holder testified that about five years before the trial (which took place in December, 1921) he saw this flagstone in a position described by him in very much the same way as the witnesses above referred to had described it; that he had seen this defect a good many times after first noticing it, "until the thing was fixed up," and he supposed it remained in that condition "over one year." One year from five years previous to the trial would be about two and one-quarter years before the accident. It was thus a matter of doubt whether the defect observed by Mr. Holder was the same defect which caused the accident, or a similar one existing at a prior period.

Mrs. Hindman testified that about two years before the accident she saw this stone out of position, the corner of it next to the curb being raised up

two or three inches. Further on she said that at the edge next to the curb the raising was two or two and one-half inches. She also stated that the defect was never repaired before the accident. The displacement which she mentioned as existing two years before the accident was thus not, as described by her, so extensive as that described by the witnesses who examined the stone just after the accident. The view which we took of her testimony was this: If considering her testimony and the other testimony in the case in connection with each other the jury should find that the condition which she described as existing two years previously was an earlier stage of a progressive displacement, which developed into and culminated in the greater degree of displacement described by others as existing on the day of the accident, and that the degree to which the displacement had developed two years before was such as to make it a noticeably dangerous defect in the sidewalk at that time, which the borough ought within a reasonable time to take notice of and remedy, but through a neglect to do so for two years it was allowed to develop into the still more dangerous condition which existed on March 8, 1919, the borough might, upon these facts, be found to have failed to perform its duty. With this view we submitted the case to the jury upon the evidence, and we are not convinced that we should not have done so.

2. The plaintiffs offered testimony to show that the accident occurred on a rainy and very dark night; that while there was an arc light in the street to Mrs. Weaver's rear as she approached the flagstone, the position of that light, and the position of certain poles and trees standing at the edge of the sidewalk were such, relatively to each other, that the flagstone in question and the sidewalk in its immediate vicinity were in deep shadow and in such darkness that it was impossible for her to see the defect in the pavement.

Of course, if she knew beforehand of the existence of this dangerous condition, it would, under the circumstances stated, be negligence for her to attempt to walk over the danger spot in the sidewalk. She testified that she had never seen it and was not aware of it. On cross-examination, she stated that several hours previously, "a little before dark," she had passed over this same sidewalk, going in the opposite direction, but that she did not on that occasion notice this defect in the walk. But the fact that on one or more previous occasions the plaintiff may have passed over a walk without observing the defect which subsequently occasioned the injury cannot be declared negligence, as matter of law, by the court: Butcher *v.* Philadelphia, 202 Pa. 1; Wall *v.* Pittsburgh, 205 Pa. 48.

She testified that she and her son, who was walking with her, were talking just before the accident occurred, and in one place she stated that they were not paying attention to the pavement, because they supposed them to be fit to walk upon, but elsewhere she stated that she was looking ahead and could see the light reflected by the pavement beyond the point of accident. Something was said by her about the condition of her eyesight, and it is argued that it was defective, and, therefore, she was under a duty of exercising more than ordinary care. But, taking what she says on this subject as a whole, it is a question whether, properly interpreting her testimony, the defectiveness of vision to which she referred was anything more than inability, such as is common among elderly persons, to read without proper glasses.

We think that it was a question for the jury, upon all the evidence, whether Mrs. Weaver exercised due and proper care according to the circumstances.

And now, May 8, 1922, after argument and consideration, it is ordered that the defendant's motion for judgment *non obstante veredicto* be overruled, and that judgment be entered upon the verdict on payment of the jury fee.